UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRIAN FRANK,

                              Plaintiff,

                                                                    **DECISION AND ORDER**

              -v-                                                  06-CV-6374L

COUNTY OF ONTARIO, PHILLIP C. PROVERO,
ALICE HASKINS, BENJAMIN LANKHEET, M.D.,
TERRY DOE, SANDY DOE, DEBBIE DOE, JOHN
DOES 1-5, MARY DOES1-5, AND JOHN DOE
CORPORATION,

                              Defendants.

_____


# INTRODUCTION


        Plaintiff Brian Frank, a former pretrial detainee at the Ontario County Jail ("Jail"),

brought an action in New York state court against the County of Ontario, Phillip C. Povero, Alice

Haskins, Terry Toe, Sandy Doe, Debbie Doe, John Does 1-5, Mary Does 1-5, and John Doe

Corporation (collectively "the County defendants"), and Benjamin Lankheet, M.D., alleging

medical malpractice by Lankheet, and civil rights claims against the County defendants under 42

U.S.C. §§ 1983 and 1985 (Dkt. #1).  Defendants removed the action to this Court based on

federal question jurisdiction.  *See* 28 U.S.C. §§ 1331, 1441.

        At all times relevant to this action, Dr. Lankheet was a physician at the Jail, and Medical

Director of Public Health for Ontario County.[1]  Following discovery, "Debbie Doe" has been

identified as Deborah Harter, a Nurse Practitioner employed at the Jail.  Plaintiff has conceded

that there is no basis for a claim against defendants Alice Haskins and Sandy Doe (who has been

identified as Sandy LaFleur), and the claims against those defendants are dismissed.

_____

        [1]Dr. Lankheet was apparently employed by Ontario County at the time of the relevant events,
*see* Complaint ¶ 9; Lankheet's Answer (Dkt. #28-2) ¶ 2.  He is represented by separate counsel, however.

Although the complaint names "John Does - 5," "Mary Does 1-5," and "Terry Doe" as persons allegedly "involved in denying and/or delaying medical care," plaintiff has not identified those defendants, and the discovery period has long since closed.  The Court will therefore dismiss the complaint as against the unnamed "Doe" defendants.  Likewise, the complaint is dismissed with regard to "John Doe Corporation."

The County defendants and Lankheet have filed motions for summary judgment dismissing the Plaintiffs' claims (Dkt. #26, #28).  For the reasons that follow, the motions for summary judgment are granted, and the complaint is dismissed.

## FACTUAL BACKGROUND

The following facts, taken from the parties' statements of facts and affidavits,  are undisputed unless otherwise indicated.[2]

Plaintiff has an extensive medical history for a multitude of ailments, primarily involving digestive problems and drug abuse, dating back some twenty years, long before the events giving rise to this lawsuit.  That history will only be summarized here, with additional details set forth as necessary in the Discussion section below.

Plaintiff was arrested in April 2005, and brought to the Jail, where he was held in pretrial custody.  At that time, he was given a health assessment by medical staff at the Jail, pursuant to

---

[2]Plaintiff's opposing statement of material facts does not comply with Local Rule of Civil Procedure 56(a)(2) in that it does not respond to the Defendants' statements of fact with correspondingly numbered paragraphs.  Rather, plaintiff has submitted a list of 53 alleged facts, inexplicably numbered 120 to 173, with some relating to the County defendants' asserted facts not in dispute, and others relating to Lankheet's asserted facts.  Additionally, plaintiff has not provided citations to admissible evidence in his opposing statement, as required by Local Rule 56(a)(3).

Ordinarily, the Court would overlook such transgressions, because most inmate plaintiffs appear *pro se*.  In the case at bar, however, plaintiff is represented by counsel.  Such disregard for the rules of this district is far less excusable on the part of an attorney.  Since plaintiff's submissions are substantively insufficient to defeat defendants' motions, however, I find it unnecessary to decide whether to preclude them.

Jail practice and policy.  That assessment, which was based in large part on plaintiff's own statements, indicated that plaintiff reported having been diagnosed with Crohn's disease, and that he had been prescribed certain medications within the past year.  *See* County Defs. Ex. B at 29.

Over the next few weeks, plaintiff was also examined by Jail medical staff, who also took some steps to verify plaintiff's medical history by contacting the offices of physicians who had seen or treated plaintiff prior to his arrest.  The information provided by those offices indicated that plaintiff had a history of drug use, and that in general, his test results (most of which centered on plaintiff's complaints of digestive problems) were normal.

In late April 2005, based in part on plaintiff's report of ulcerative colitis, defendant Harter ordered blood tests for plaintiff, which yielded generally normal results.  On May 3, 2005, Lankheet conducted a physical examination of plaintiff in response to plaintiff's complaints of abdominal pain and bloody stools.  Lankheet found that plaintiff's vital signs and blood test results were inconsistent with a diagnosis of ulcerative colitis, which had been reported by plaintiff.  County Defs. Ex. C at 30, Ex. D (EBT Ex. 18).

Lankheet's notes further indicate that he discussed plaintiff's case with two outside gastroenterologists, and that based on their advice and with plaintiff's consent, Lankheet prescribed Prednisone and Asacol, with the understanding that if plaintiff's condition did not improve, he would be referred to an outside specialist.

In a May 3, 2005 entry by Harter in plaintiff's medical file, she also noted that just after Dr. Lankheet had finished his examination of plaintiff on that day, plaintiff stated, "I guess I really screwed myself by trying to get all those pain meds in the past, because now if I go to another doctor and they find that out, I don't know what they will do."  Harter said that she then "explained to the patient that more importantly, he's given our staff only bits and pieces and misinformation about his past medical history, caused [sic] greater time lapse for us to obtain verification."  County Defs. Ex. B at 37, Ex. D (EBT Ex. 8), Ex. C at 34-35.

Over the following days and weeks, plaintiff continued to complain of various symptoms, in response to which the medical staff performed further examinations and testing.  Again, plaintiff's test results, vital signs, and physical appearance were all normal and unremarkable.

Harter's noted from May 17 indicated that plaintiff stated that he had "screwed up" by not following his previous doctor's advice to have surgery, and that he demanded to go to the hospital.  Later that day, plaintiff reported that he had vomited blood, but the attending nurse stated that the "blood" resembled tomato sauce, and noted that plaintiff stated he had eaten tomato sauce with meatballs for supper.  County Defs. Ex. D, EBT Ex. 17.

More tests, including an abdominal pelvic ultrasound, followed, which continued to yield normal results.  Eventually, although the cells from Plaintiff's biopsy were not typical of ulcerative colitis, Lankheet settled on that diagnosis "given the clinical scenario."  County Defs. Ex. C at 45.  Lankheet determined that the next logical step was to  order  pelvic and abdominal CT scans, but on May 19, 2005, plaintiff was released from custody and was no longer under Lankheet's care.

 After plaintiff's release, he was admitted to F.F. Thompson Hospital in Canandaigua, New York, and during his eleven-day stay there, he was diagnosed with ulcerative colitis exacerbation, cellulitis secondary to PICC line inflection, and probable narcotic dependency. Plaintiff's hospital records indicate that surgery was not indicated, and they also contain notations of a "difficult situation since [patient] is not trustworthy regarding his symptoms ... manipulative to increase hospital stay and narcotic usage ... borderline personality–may need psychiatric eval ... ."  County Defs. Ex. E.

Plaintiff continued to seek medical treatment, often by reporting to various hospital emergency rooms, complaining of various symptoms, but he was generally discharged each time after a few hours, in stable or better condition.

On June 27, 2005, plaintiff was admitted to Rochester General Hospital for a surgical consultation regarding a possible colectomy.  The attending physician recommended surgery to

-4-

alleviate acute abdominal symptoms, but plaintiff refused surgery.  The doctor stated that "the patient did not want to take responsibility for his decision for not wanting surgery, and there was a question of possible personality disorder."  County Defs. Ex. J.

A few days later, plaintiff changed his mind and requested surgery, but at that point, the physician who was treating plaintiff reported that plaintiff's symptoms were no longer acute, and he recommended that plaintiff be discharged, with instructions to follow up as an outpatient with a colorectal surgeon.  Def. Ex. J.

On July 16, 2005, Plaintiff was readmitted to Rochester General Hospital with ulcerative colitis compounded by medical noncompliance.  The admission record indicates that plaintiff had refused an earlier recommendation of surgery, and that there were questions about his mental competency.  Def. Ex. K.  After several more medical consults, plaintiff was eventually scheduled for, and consented to surgery, and in late July, a Dr. Chang performed a subtotal colectomy.  *Id.*

Following his surgery, Plaintiff sought emergency treatment for abdominal pain on July 27, 2005 at Geneva General Hospital, where he was treated, given pain medication, and released a few hours later in stable condition.  Later that day, plaintiff reported to the emergency department at F.F. Thompson Hospital, and from there he was transferred to Rochester General. After a brief stay, plaintiff was discharged.  His discharge summary states, in part, that plaintiff exhibited belligerent behavior, had not been taking his previously prescribed medication, and that due to plaintiff's "uncooperative and belligerent behavior," the attending physician was unable to complete his examination of plaintiff.  Def. Ex. L.

Plaintiff alleges that "[o]n May 17, 2006, ... Frank was 'readmitted' to the jail." Plaintiff's Statement of Facts (Dkt. #41-1) ¶ 151.  He does not allege that he received any further treatment from defendants.

The complaint asserts six causes of action:  (1) negligence; (2) "medical negligence"; (3) cruel and unusual punishment under the New York State Constitution; (4) cruel and unusual

punishment under the Eighth Amendment to the United States Constitution; (5) an Eighth

Amendment Claim pursuant to 42 U.S.C. § 1983; and (6) a civil rights conspiracy claim under 42

U.S.C. § 1985.[3]

# DISCUSSION

## I. Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate where the moving papers and affidavits submitted by the parties "show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

To survive a motion for summary judgment, the nonmoving party must produce evidence

in admissible form "sufficient to establish the existence of an element essential to the party's

case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S.

317, 322 (1986). All evidence will be viewed in the light most favorable to the nonmoving party,

and the court must draw all reasonable inferences in that party's favor. *See*, *e.g., American*

*Casualty Company of Reading, P.A. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994).

## II. Eighth Amendment Claims

The Eighth Amendment protects incarcerated individuals from being subjected to cruel

and unusual punishment. Such punishment may include prison officials' deliberate indifference

to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

---

[3]Plaintiff has conceded that his conspiracy claim is insPlaintiff contends that the County Defendants conspired to deprive him of privileges and immunities under the law pursuant to 42 U.S.C. § 1985. *See* Compl. ¶¶ 109-112, Plaintiff, however, has conceded that this cause of action is "unsustainable." *See* Melvin Bressler Aff. (Dkt. #39) ¶ 13. Accordingly, plaintiff's sixth cause of action, alleging a civil rights conspiracy claim under § 1985, is dismissed.

The Supreme Court has held that although the Eighth Amendment's protections do not directly apply to pretrial detainees, the due process protections afforded to pretrial detainees "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243-44 (1983) (citations omitted). *See also Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("We have often applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment"). Thus, the Court will analyze the plaintiff's Fourteenth Amendment Due Process claims of deliberate indifference to the serious medical needs under the Eighth Amendment deliberate indifference standard applicable to convicted prisoners.

To show that prison medical treatment was so inadequate as to amount to "cruel and unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendant's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To establish such a claim, then, the prisoner must prove (1) the existence of a serious medical need and (2) the defendant's deliberate indifference to that need.

The "deliberate indifference" component, as explained by the Supreme Court, includes both an objective and subjective element. *Wilson v. Seiter*, 501 U.S. 294, 298-299 (1991). With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. *Id.* "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Thus, Eighth Amendment protection is limited to "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

With respect to the subjective aspect, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Wilson*, 501 U.S. at 298-99. To

establish indifference of a constitutional magnitude, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. *See id.* at 299; *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992).

The Supreme Court in *Estelle* also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eight Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106.  Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Id.* at 105-06.  It is clear, then, that allegations of malpractice alone do not state a constitutional claim. *Id.* at 106 n. 14; *Chance*, 143 F.3d at 703-04; *Ross*, 784 F.Supp. at 44.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

## III. County Defendants

Plaintiff's complaint alleges that the defendants violated his constitutional rights by failing to provide him with adequate medical care.  Specifically, plaintiff alleges that for the twenty-nine days he was held at the jail, defendants withheld is medication and denied him necessary medical treatment.  Complaint ¶¶ 33-43.

The County defendants contend that Plaintiff did not require emergency surgery during his stay at the Jail, or at the time that he was released from the Jail, and that plaintiff's surgery eight weeks after his release was unrelated to, and not occasioned by, the treatment he received at

the Jail.  Therefore, they assert, plaintiff cannot show that he had a serious medical need for purposes of an Eighth Amendment claim.

Construing the record in the light most favorable to plaintiff, the nonmoving party, I conclude that the evidence in the record fails to support his claims, and does not give rise to a genuine issue of material fact.  Defendants are entitled to summary judgment.

The undisputed facts show that the medical staff at the Jail did treat plaintiff.  He was repeatedly examined during his relatively brief stay at the Jail, and defendants ordered tests on more than one occasion, which generally yielded normal results that did not indicate the need for surgery or more aggressive treatment.

Even assuming, *arguendo*, that it would have been medically advisable or wise for defendants to have taken more aggressive action, sooner than they did (and I do not believe that the evidence does support such a finding), plaintiff has not adduced sufficient facts to make out either the objective or subjective prongs of an Eighth Amendment claim.

Where an inmate plaintiff's claim is based on an unreasonable delay in treatment, "the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (internal quotation marks and alterations omitted).  Stated differently, "it's the particular risk of harm faced by the prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (quoted in *Goris v. Breslin*, 402 Fed.Appx. 582, 585 (2d Cir. 2010)).  The question, then, is whether, from an objective standpoint, the temporary deprivation was sufficiently harmful to establish a constitutional violation.  *Smith*, 316 F.3d at 186; *see also Rodriguez v. Ames*, 224 F.Supp.2d 555, 561 (W.D.N.Y. 2002) ("Although a delay in medical care can demonstrate deliberate indifference to a prisoner's medical needs, a prisoner's Eighth Amendment rights are violated only where the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or

fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment") (internal quotation omitted).

In the case at bar, plaintiff has submitted a copy of an unsworn letter from Dr. Martin Golding, a gastroenterologist, in which he opines that "the failure of the Ontario County Jail to provide Plaintiff with Prednisone and Asacol, given his known history of colitis and presenting symptoms precipitated an acute flair of his colitis, ultimately requiring emergency hospitalization and surgery."  County Defs. Ex. V.  However, at Golding's deposition a year later, he indicated that the fact that plaintiff's surgery did not take place until some weeks after he was discharged from the Jail suggested that plaintiff did not need emergency surgery as a result of the treatment (or the alleged inadequacy of the treatment) that he had received at the Jail.  *See* Lankheet Ex. H (Dkt. #28-8) at 87-91.

The record also indicates that plaintiff was advised to undergo surgery for his gastric condition both before and after his detention at the Jail, but that plaintiff repeatedly declined surgical intervention.  Significantly, plaintiff does not dispute his own noncompliance with or refusal of his treating physicians' recommendations both before and after he was held at the Jail, nor does he deny that he was prescribed Prednisone as early as January 2005, but did not fill the prescription until April 2005, immediately before he was admitted to the Jail.  All of these facts undercut plaintiff's allegations concerning the seriousness of his condition and the immediacy of his need for treatment.  *See, e.g.*, *Greene v. Furman*, 610 F.Supp.2d 234, 237 (W.D.N.Y. 2009) (plaintiff failed to state an Eighth Amendment claim where there was "no allegation that any delay in plaintiff's mental health treatment ... caused any actual harm to plaintiff, or that it put his health at risk"); *Ross v. Kelly*, 784 F.Supp.35, 46-47 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (evidence failed to establish deliberate indifference to medical needs where plaintiff was largely to blame for many of the delays in his treatment due to his second-guessing of physician's advice and refusal of treatment).  Even when the facts are construed in his favor, then, the Court finds that plaintiff has not presented sufficient evidence for a factfinder to conclude that any

delays with respect to the treatment that he received at the Jail posed a serious risk to his health, particularly in light of plaintiff's repeated failures to cooperate with his physicians, both in and out of the Jail.

In addition, even if plaintiff could establish the objective element of an Eighth Amendment claim, he has not presented sufficient facts to show that defendants acted with a culpable state of mind.  As discussed more fully below, plaintiff provides no admissible evidence that Jail medical staff knew of and disregarded an excessive risk to his health.  *See Greene*, 610 F.Supp.2d at 237 ("There are also no allegations even suggesting that defendants' actions were taken out of any sadistic or otherwise impermissible motive.  Thus, even accepting the truth of plaintiff's factual allegations, he has not made out either the objective or subjective prongs of an Eighth Amendment claim").

It is undisputed that defendants did not immediately prescribe certain medications for plaintiff, and that they did not immediately refer him to a specialist after plaintiff complained of bloody stools and abdominal pain.  Plaintiff cannot show, however, that defendants acted with the requisite state of mind.

In order to make out an Eighth Amendment claim, plaintiff must show not only that defendants neglected his serious medical need, but that they did so with a mental state "equivalent to subjective recklessness, as the term is used in criminal law."  *Salahuddin*, 467 F.3d at 280.  *See also Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) ("The Eighth Amendment prohibition of the infliction of 'cruel and unusual punishments' extends to punishments that involve 'the unnecessary and wanton infliction of pain'") (citation omitted).

As stated earlier, mere negligence on the part of a physician or other prison official in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment.  While a lengthy, unjustifiable delay in providing necessary medical treatment may constitute deliberate indifference, *see Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000), that is not at all what happened here.  Plaintiff merely asserts, after the fact, and in the face of  his

own refusal of various medical professionals' advice, that more should have been done for him, sooner.  His subjective, hindsight-driven beliefs are not enough to make out an Eighth Amendment claim.  *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim"); *see also Murray v. Ramineni*, No. 08-CV-809, 2011 WL 1315777 (N.D.N.Y. Nov. 3, 2011) ("To the extent that Murray contends he should have been seen by a specialist, such contentions are also unavailing.  Inmates are not guaranteed treatment that they prefer or request.  Rather, they are guaranteed adequate medical treatment").[4]

Based on my findings concerning the County defendants, there is also no basis for plaintiff's claim against the County, which rests on his allegation that the County violated his civil rights by adopting a policy of "denying medical care to save money."  *See* Complaint ¶¶ 44-47.

Where a § 1983 claim is alleged against a municipality, based on the allegedly unconstitutional acts of its employees, a plaintiff must demonstrate that his injuries resulted from a municipal policy, custom, or practice.  *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978) (a municipality "may not be sued under § 1983 for an injury inflicted solely by its employee," unless "execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983").  A plaintiff alleging a *Monell* claim against a municipality must therefore demonstrate that an official policy or custom caused the plaintiff to be subjected to a denial of a constitutional right.  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

---

[4]Given the Court's conclusion that the County defendants are entitled to summary judgment, there is no need to address their additional contention that they are protected by qualified immunity.  *See Duamutef v. Hollins*, 297 F.3d 108, 113 n.1 (2d Cir. 2002).  I note, nonetheless, that for the reasons given as to the merits of plaintiff's Eighth Amendment claims, it was objectively reasonable for defendants to believe that their actions did not violate plaintiff's constitutional rights, and that they would therefore be entitled to qualified immunity.  *See Pack v. Bukowski*, No. 07–CV–6344, 2010 WL 1403995, at *4 (W.D.N.Y. Mar. 31, 2010).

It is axiomatic that in order for a plaintiff to succeed with a *Monell* claim, he must first prove that he actually suffered a constitutional injury.  *See People United for Children, Inc. v. City of N.Y.*, 108 F.Supp.2d 275, 302 (S.D.N.Y. 2000) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)).  As stated, plaintiff has failed to show that he suffered any such constitutional harm.  Even if he could prove such harm, however, paintiff's allegations concerning the County are purely conclusory.  The complaint contains no factual allegations that might establish a custom or policy that played any part in the claimed violation of his constitutional rights.  *See Kentucky v. Graham*, 473 U.S. 159 (1985).

**IV. Lankheet**

For many of the same reasons stated with respect to the County defendants, Dr. Lankheet is also entitled to summary judgment.  The evidence in the record shows that Lankheet examined plaintiff, that he consulted with two outside gastroenterologists who had previously treated plaintiff, and that at their recommendations, he prescribed medications for plaintiff.  Notably, plaintiff's own expert testified that Lankheet's course of action was "appropriate and reasonable" under the circumstances.  Lankheet Ex. H at 65-68.  There is simply no evidentiary basis for a finding that Lankheet ignored any serious medical need on plaintiff's part.   Accordingly, the Court cannot find that a question of fact exists as to the reasonableness of Lankheet's conduct. *See Farmer*, 511 U.S. at  845, 847  (prison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Eighth Amendment cruel and unusual punishment clause, whereas failing "to take reasonable measures" in response to a medical condition can lead to liability).

There is also no evidence that Lankheet possessed a sufficiently culpable state of mind to establish deliberate indifference.  The record is clear that Lankheet took affirmative steps to diagnose, monitor and treat plaintiff's condition.  To the extent that plaintiff alleges that Lankheet did not properly diagnose his condition, or its severity, such  allegations do not evince

"culpable recklessness" for purposes of the Eighth Amendment. *Chance*, 143 F.3d at 703; *see also Byng v. Wright*, No. 09 Civ. 9924, 2012 WL 967430, at *11 (S.D.N.Y. Mar. 20, 2012) (failure to diagnose hernia does not satisfy the subjective prong of the deliberate indifference standard); *Beaman v. Unger*, ___ F.Supp.2d ___, No. 10–CV–6480, 2011 WL 4829417, at *3 (W.D.N.Y. Oct. 12, 2011) (misdiagnosis and failure to recognize the severity of injuries "might conceivably show malpractice, but they do not state an Eighth Amendment claim"); *Woodhull v. County of Kent*, No. 04-CV-203, 2006 WL 2228986 (W.D. Mich. Aug. 3, 2006) (finding no deliberate indifference where defendant nurse possibly committed malpractice in failing to recognize severity of inmate's seizure condition that ultimately resulted in his death).

Further, any interruption in the course of plaintiff's prescription treatment is plainly attributable chiefly to plaintiff's own lack of cooperation and dissembling with respect to his medical history.  No purposeful delay by Lankheet is suggested by the record.  *See Matos v. Gomprecht*, No. 11–CV–1968, 2012 WL 1565615, at *8 (E.D.N.Y. Feb. 14, 2012) (while cruel and usual punishment may consist of prison officials delaying an inmate's access to needed medical care, Second Circuit case law has reserved such a classification for cases in which officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition, or delayed needed major surgery for years) (citing cases).

## V. State Law Claims

Having dismissed all of plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over his claims under New York law.  *See* 28 U.S.C. § 1367; *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well"); *see, e.g.*, *Selinger v. City of New York*, 453 Fed.Appx. 93, 96 (2d Cir. 2011) ("Because Greene was entitled to summary judgment on Paul Selinger's federal claims, the district court was within its discretion to decline exercising supplemental jurisdiction over plaintiffs' remaining state law claims") (citing

-14-

*Doninger v. Niehoff*, 642 F.3d 334, 357 (2d Cir.), *cert. denied*, 132 S.Ct. 499 (2011)); *Ognibene v. Niagara County Sheriff's Dep't*, 117 Fed.Appx. 798, 799 (2d Cir. 2005) ("The district court properly exercised its discretion in declining to exercise supplemental jurisdiction ... over Ognibene's state-law malpractice claim in the absence of any viable federal claim"); *Mann v. Daniels*, No. 10 Civ. 7540, 2011 WL 2421285, at *5 (S.D.N.Y. June 9, 2011) (declining to exercise supplemental jurisdiction over state law claim for medical malpractice after dismissing § 1983 claims).

## CONCLUSION

Defendants' motions for summary judgment (Dkt. #26, #28) are granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
July 9, 2012.